# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| FRANK CALANDRA, INC., | ) |
| Plaintiff, | ) ) ) |
| v. | ) ) Civil Action No. 16-159 |
| 4i CONSULTING, INC., | ) Judge Nora Barry Fischer ) |
| Defendant. | ) ) |

## MEMORANDUM OPINION

I.     BACKGROUND

This is a declaratory judgment action brought pursuant to 28 U.S.C. § 2201 and Rule 97 of the Ontario Courts of Justice Act, R.S.O. 1990, CH. C. 43, wherein Pittsburgh-based Plaintiff Frank Calandra, Inc., ("FCI"), seeks a declaration of rights under a Consulting Agreement that it previously entered into with Ontario, Canada-based Defendant 4i Consulting, Inc., ("4i"). (Docket No. 1 at ¶ 54). The Consulting Agreement at issue expressly provides that "[t]his Agreement shall be construed only in accordance with the laws of Ontario, Canada." (Docket No. 1-2 at 5; *Consulting Agreement* at ¶ 22). On February 5, 2016, 4i sent FCI a letter and invoice stating that 4i is owed $6,426,000.00 in Canadian dollars under the Consulting Agreement for "success fees" which 4i believes were earned at the conclusion of several transactions that FCI publicly announced on February 2, 2016. (Docket No. 11-3). Through this correspondence, 4i requested written confirmation from FCI by February 12, 2016 that the invoiced amounts would be paid contemporaneously with those deals closing. (*Id.*). Rather than responding to the letter, FCI initiated this lawsuit a mere 5 days later, on February 11, 2016. (Docket No. 1). FCI seeks a declaration that it properly terminated the Consulting Agreement effective November 20, 2014 and that 4i is not entitled to compensation after the date of the

termination of the contract including for any "success fees." (Docket No. 1 at 9-10).

Presently before the Court is a motion to dismiss filed by 4i raising a host of legal defenses to this lawsuit, arguing that: the Court lacks subject matter jurisdiction over this declaratory judgment action as the claim is not ripe; the Court lacks personal jurisdiction over Canadian-based 4i; and that this District is an improper forum for the parties' disputes. (Docket Nos. 10, 11). FCI opposes the Motion on all bases. (Docket No. 13). The parties have presented the Court with affidavits and documentary evidence as part of their motions practice in addition to the Consulting Agreement and a separate Confidentiality Agreement that were filed as attachments to the Complaint.[1] (Docket Nos. 11, 13). During the course of these proceedings, FCI declined the Court's invitation to amend its Complaint, expressly requesting a ruling on the pending motion. (Docket No. 15). Hence, the matter is now ripe for disposition.[2] Having fully considered the parties' arguments, all of the evidence of record and for the following reasons, 4i's Motion to Dismiss will be granted, as this Court will decline to exercise subject matter jurisdiction over this case pursuant to the power provided to it under the Declaratory Judgment Act, 28 U.S.C. § 2201(a) and will therefore dismiss FCI's Complaint, without prejudice.

II. LEGAL STANDARD

"The Declaratory Judgment Act does not mandate that federal district courts exercise jurisdiction over every declaratory judgment action." *Allstate Property and Cas. Inc. co. v. Owens*, Civ. No. 11-4, 2011 WL 94412, *1 (W.D. Pa. Jan. 11, 2011) (quoting *Allstate Ins. Co. v. Seelye*, 198 F. Supp. 2d 629, 630-31 (W.D. Pa. 2002)). The Act provides, in relevant part, that a court "*may* declare the rights and the other relations of any interested party." 28 U.S.C. § 2201

---

[1] The Court agrees with the parties that matters outside the Complaint may be considered as this dispute involves a challenge to the subject matter jurisdiction of the Court and personal jurisdiction over Defendant. *See Gould Elec. Inc. v. United States*, 220 F.3d 169, 178 (3d Cir. 2000).

[2] As the Court will enter an Order dismissing this action, without prejudice, the Court's Order directing 4i to file a Reply Brief by May 30, 2016 is vacated, as moot. (Docket No. 16).

(emphasis added).[3] Accordingly, the jurisdiction conferred by the Act is discretionary, and district courts are under no compulsion to exercise it. *State Auto Ins. Cos. v. Summy*, 234 F.3d 131, 133 (3d Cir. 2000) (citing *Brillhart v. Excess Ins. Co. of America*, 316 U.S. 491, 494 (1942); *accord Wilton v. Seven Falls Co.*, 515 U.S. 277, 287-88 (1995) (holding that the Declaratory Judgment Act affords district courts "unique and substantial discretion in deciding whether to declare the rights of litigants")); *see also Reifer v. Westport Ins. Corp.*, 751 F.3d 129, 137 (3d Cir. 2014). District courts do not, however, have unlimited discretion to "decline jurisdiction over a declaratory judgment action when the issues include[] federal statutory interpretation, the government's choice of a federal forum, an issue of sovereign immunity, or adequacy of the state proceeding." *Summy*, 234 F.3d at 134 (citing *United States v. Commonwealth of Pa., Dep't of Envtl. Res.*, 923 F.2d 1071, 1076-79 (3d Cir. 1991)). But, none of those exceptions are at issue in this case.

The Court of Appeals has directed this Court to give meaningful consideration to the following non-exhaustive list of factors prior to declining to exercise jurisdiction:

> (1) the likelihood that a federal court declaration will resolve the uncertainty of obligation which gave rise to the controversy;
> (2) the convenience of the parties;
> (3) the public interest in settlement of the uncertainty of obligation;
> (4) the availability and relative convenience of other remedies;
> (5) a general policy of restraint when the same issues are pending in a state court;
> (6) avoidance of duplicative litigation;
> (7) prevention of the use of the declaratory action as a method of procedural fencing or as a means to provide another forum in a race for res judicata;[4]

---

[3] In pertinent part, the Declaratory Judgment Act provides:
> [i]n a case of actual controversy within its jurisdiction, … any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not relief is or could be sought. Any such declaration shall have the force and effect of a final judgment or decree and shall be reviewable as such.

28 U.S.C. § 2201(a).

[4] The eighth enumerated factor is not at issue here as it is applicable only "in the insurance context," i.e., "an

*Reifer*, 751 F.3d at 146. Despite its featured inclusion among the stated factors, a parallel lawsuit in another forum is not a prerequisite but is merely one of the factors that the Court should consider prior to dismissing the case. *See Reifer*, 751 F.3d at 144. Finally, if the Court believes that it should decline to exercise jurisdiction over the matter, it may do so *sua sponte*. *See Summy*, 234 F.3d at 136.

III. DISCUSSION

Before addressing the necessary factors, the Court notes that while the parties have not directly raised each of these issues in the order presented above, their arguments do evaluate essentially the same factors as their disputes include: challenges to subject matter jurisdiction under the Declaratory Judgment Act; personal jurisdiction over 4i; and, the convenience of the U.S. District Court for the Western District of Pennsylvania as an appropriate forum. (*See* Docket Nos. 11, 13). As such, their positions certainly inform the Court's analysis of the pending case in relation to the aforementioned factors. (*See id.*). Having conducted a careful evaluation of the relevant factors, the Court finds that dismissal of this lawsuit, without prejudice, is the appropriate disposition of this case. *See* 28 U.S.C. § 2201(a). The Court now provides its reasons for this decision.

*A. Would the Entry of Judgment Resolve Uncertainty of Obligations of the Parties?*

With respect to the first factor, the Court finds that the entry of a judgment in this case would not conclusively resolve "the uncertainty of obligation which gave rise to the controversy" between the parties and it appears that the Court lacks sufficient information to even decide the motions that have been filed. *Reifer*, 751 F.3d at 146. Indeed, the facts that 4i has lodged vigorous objections to this Court's exercise of subject matter jurisdiction over the case and

---

inherent conflict of interest between an insurer's duty to defend in state court and its attempt to characterize that suit in federal court as falling within the scope of a policy exclusion." *Reifer*, 751 F.3d at 146.

personal jurisdiction over it weigh strongly in favor of declining to exercise jurisdiction under the Declaratory Judgment Act. *See e.g., Summy*, 234 F.3d at 136 ("vigorous objection to the District Court's assumption of jurisdiction should have weighed in favor of refusing to entertain the action.").

As to subject matter jurisdiction, the parties debate whether this matter is ripe for judicial review but that decision cannot be reached without the Court first conducting a choice of law evaluation of the substantive law that governs their contractual agreement. (Docket Nos. 11, 13). Sitting in diversity, this Court applies Pennsylvania choice of law rules, *Klaxon v. Stentor Elec. Mfg. Co.,* 313 U.S. 487, 496 (1941), and it is well settled that "Pennsylvania courts generally honor the intent of the contracting parties and enforce choice of law provisions in contracts executed by them," *Kruzits v. Okuma Mach. Tool, Inc.*, 40 F.3d 52, 55 (3d Cir. 1994) (citing *Smith v. Commonwealth Nat. Bank*, 384 Pa. Super. 65, 557 A.2d 775, 777 (1989), *appeal denied*, 524 Pa. 610, 569 A.2d 1369 (1990)). FCI seeks a declaration of rights under the parties' Consulting Agreement under which they expressly agreed that "[t]his Agreement shall be construed only in accordance with the laws of Ontario, Canada."[5] (Docket No. 1-2 at 5; Consulting Agreement at ¶ 22). Yet, neither party has briefed nor raised the issue of the applicable Canadian law at this juncture and it is their burden to provide the Court with the applicable law so that it can be applied to the case. *See Harris v. Kellogg, Brown & Root Servs., Inc.*, 796 F. Supp. 2d 642, 651 (W.D. Pa. 2011) (quoting *Bel–Ray Co., Inc. v. Chemrite (Pty) Ltd.*, 181 F.3d 435, 440 (3d Cir. 1999) ("'The parties ... generally carry both the burden of

---

[5] The parties' separate Confidentiality Agreement contains a choice of law clause, (and forum selection clause), stating that Pennsylvania law governs that "Agreement" related to "confidential information" exchanged between the parties prior to and during their relationship. (Docket No. 1-3). But, there is not a single allegation in the Complaint that 4i breached any of its obligations under the Confidentiality Agreement. (*See generally* Docket No. 1 at ¶¶ 1-54). Rather, all of FCI's allegations focus on the parties' rights under the Consulting Agreement. (*Id.*). Given same, Pennsylvania substantive contract law has no import to the interpretation of the Consulting Agreement.

raising the issue that foreign law may apply in an action, and the burden of adequately proving foreign law to enable the court to apply it in a particular case.'")). FCI's failure to do so, despite the express language in the Consulting Agreement under which they seek a declaration of rights, weighs in favor of declining to exercise jurisdiction over this matter. *See id.*

Beyond the lack of guidance from the parties on the substantive Canadian law that they agreed governed their contract, other courts have cautioned that the power to decide the rights of litigants under the Declaratory Judgment Act "must be exercised with great care when foreign law and actions are involved." *Crane v. Poetic Products Ltd.*, 593 F. Supp. 2d 585, 598 (S.D. N.Y. 2009), *aff'd*, 351 F. App'x 516 (2d Cir. 2009). Such caution arises from the fact that unlike a state court or another federal district court, the foreign jurisdiction is not required to accept this Court's declaration of the parties' rights under the applicable Canadian law. *See e.g.*, *Wyeth v. Wolfe*, No. CIV.A.08-0754, 2008 WL 3984076, at *3 (E.D. Pa. Aug. 28, 2008) ("A declaration on the merits by this Court would not dispose of the case in Ontario. In fact, unless that Court decided to give *res judicata* effect to this Court's judgment, a determination by this Court would not affect the Ontario action at all. The Canadian Court is free to accept or reject any findings of this Court."); *Crane*, 351 F. App'x at 518 ("The same cannot be said of a declaration of rights under foreign law, however, as the courts of one sovereign are not strictly bound to honor judgments of the courts of another, and might be less inclined to do so on a question of their own law.") (internal citations omitted).[6] Following this precedent, it appears that any declaration of the parties' rights under their Consulting Agreement may be treated as a non-binding, advisory

---

[6] The Court recognizes that principles of comity could lead to the Canadian Court accepting the judgment. *U.S. ex rel. Saroop v. Garcia*, 109 F.3d 165, 169 (3d Cir. 1997) ("While the comity doctrine does not reach the force of obligation, it creates a strong presumption in favor of recognizing foreign judicial decrees.") (citations omitted); RESTATEMENT (THIRD) OF FOREIGN RELATIONS LAW § 481 (1987) ("Judgments granting injunctions, declaring rights or determining status, and judgments arising from attachments of property, are not generally entitled to enforcement, but may be entitled to recognition under this and the following sections."). However, the point remains that any judgment by this Court would not automatically bind the foreign court.

opinion by Canadian Courts, significantly undermining the practical utility of such a judgment, and counseling strongly against this Court's exercise of jurisdiction over the action. *See Step-Saver Data Systems, Inc. v. Wyse Tech.*, 912 F.2d 643, 647 (3d Cir. 1990) (holding that under the doctrine of ripeness, "[t]he most important of these principles are the adversity of the interest of the parties, the conclusiveness of the judicial judgment and the practical help, or utility, of that judgment."). Finally, all of these principles are heightened in a case such as this one where the foreign defendant is challenging this Court's exercise of personal jurisdiction over it and a lack of personal jurisdiction is always an appropriate reason to set aside a judgment, even in domestic courts. *See Lampe v. Xouth, Inc.*, 952 F.2d 697, 700 (3d Cir. 1991) ("It is an elementary requirement that personal jurisdiction must be established in every case before a court has power to render any judgment.").

For all of these reasons, the Court holds that any judgment rendered here would not conclusively resolve the underlying disputes between the parties. If anything, it appears that this Court's entry of a judgment could actually *cause* uncertainty among the parties, and encourage a separate lawsuit to be filed in Canada by the losing party here, necessarily increasing litigation costs rather than providing a single forum where the parties are able to "secure the just, speedy, and inexpensive determination" of this action. FED. R. CIV. P. 1 (2015).

### B. Convenience of the Parties/ The Availability and Relative Convenience of Other Remedies/ Public Interest in Settlement of the Controversy

The Court next looks to the related factors concerning convenience of the parties, the availability and relative convenience of other remedies, and the public interest in settlement of the controversy. *See Reifer*, 751 F.3d at 146. Viewed collectively, these factors also weigh in favor of this Court refusing to exercise subject matter jurisdiction.

In this action, FCI seeks a declaration under both the Federal Declaratory Judgment Act

and its Canadian counterpart, Rule 97 of the Ontario Courts of Justice Act, R.S.O. 1990, CH. C.43, setting forth the parties' respective rights under the Consulting Agreement. (Docket No. 1 at ¶ 54). FCI admits in its Complaint that the "relevant substantive law regarding declaratory judgment actions in United States federal district court and Ontario, Canada are very similar, if not virtually identical." (Docket No. 1 at ¶ 53). 4i has provided an affidavit from a Canadian barrister and solicitor, Samuel M. Robinson, convincingly establishing that this matter can be promptly heard in the Ontario Superior Court of Justice, (Docket No. 11-5), and FCI has offered nothing to counter his opinion, (*see* Docket No. 13). Hence, the Canadian Courts would clearly provide an appropriate forum for the litigation of this lawsuit seeking a declaration of the parties' rights under Canadian contract law.

As to convenience of the parties, litigation involving parties of different jurisdictions often results in one of the parties being inconvenienced. *See Dilmore v. Alion Sci. & Tech. Corp.*, Civ. A. No. 11-72, 2011 WL 1576021, at *7 (W.D. Pa. Apr. 21, 2011) ("Each party would doubtless find it more convenient to litigate in its home district."). But, once again, 4i has presented well-supported objections to participating in litigation in this forum under the doctrine of *forum non conveniens* and the Court is unpersuaded by FCI's response that this forum is appropriate. (Docket Nos. 11; 13). In this regard, FCI is a multi-national corporation, with significant resources including, apparently, two private planes that their executives access to fly around the world.[7] (Docket No. 11-1 at ¶ 35). Meanwhile, the record shows that 4i's performance under the Consulting Agreement generally took place in North Bay, Ontario at the home of its sole employee and operator, Richard LaBelle. (Docket Nos. 1-2 at ¶ 10; 11-1 at ¶¶ 31). North Bay, Ontario is located four hours north of Toronto, and according to Mr. LaBelle,

---

[7] The Court notes that FCI is represented by Pittsburgh-based lawyers of Reed Smith, an international law firm. But, the location of the office of a party's lawyers is not controlling. *See e.g., Northgate Processing, Inc. v. Spirongo Slag McDonald, L.L.C.*, Civ. A. No. 15-1116, 2015 WL 7308675, at *4, n.3. (W.D. Pa. Nov. 19, 2015).

travel to Pittsburgh often can require multiple days of transit due to the drive and lack of direct flights from Toronto to Greater Pittsburgh International Airport. (Docket No. 11-1 at ¶¶ 32-33). Mr. LaBelle admits that he was in Pennsylvania at times between 2013 and November of 2014, (*id.*), but the parties agree that he always traveled here at FCI's expense as part of their relationship, (Docket No. 13-1 at ¶ 19).

Relevant here, this Court has held in prior cases involving transfer motions under § 1404(a) that the *Jumara* factors often favor the forum of the employees/consultants as opposed to the companies that knowingly engaged them to work in an out-of-district office. *See e.g., Dilmore*, 2011 WL 1576021, at *7 (denying company's motion to transfer to forum of its principal place of business from forum where employee worked via telecommuting arrangement); *Armstrong Dev. Prop., Inc. v. SG Ellison, et al.*, Civ. A. No. 13-1590, 2014 WL 1452322 (W.D. Pa. Apr. 14, 2014) (granting former employees' motion to transfer case to California as company had reached out into that District to run "West Coast Office" of the business). In these instances, the Court has placed little weight on the company's choice of forum. *See id.* A similar analysis would support a transfer to the home forum of 4i, in that it is a single-person consulting firm that was engaged by FCI after it reached out to Mr. LaBelle in an effort to hire him. (*See* Docket No. 11-1 at ¶¶ 4-24). However, this Court cannot simply transfer a case to a Canadian Court, making dismissal, without prejudice, the only real option. *See* 28 U.S.C. § 1404(a).

The last inquiry is the public interest in this Court utilizing its resources to resolve the parties' disputes. *See Reifer*, 751 F.3d at 146. For many of the reasons that have already been expressed, it appears that the public here would not have any interest in this Court adjudicating the matter. Again, this is a private agreement between parties concerning: a contract to be

interpreted under Canadian law; for services that were to be largely rendered within Canada; in exchange for the payment to 4i of Canadian dollars; and, ultimately resulting in taxes to be paid by 4i to the Canadian government. (Docket Nos. 1-2 at ¶¶ 5.1, 10, 15; 11-1 at ¶ 30-31). Further, any judgment entered by this Court does not necessarily bind a Canadian Court to the same result, making this Court's opinion on the matter essentially advisory, something that this Court is generally expected to avoid. *See e.g., Pittsburgh Mack Sales & Serv., Inc. v. Int'l Union of Operating Engineers, Local Union No. 66*, 580 F.3d 185, 190-91 (3d Cir. 2009) (quoting *Presbytery of N.J. of the Orthodox Presbyterian Church v. Florio*, 40 F.3d 1454, 1468 (3d Cir. 1994)) ("'judicial action at the present time would amount to more than an advisory opinion based upon a hypothetical set of facts.'").

More pertinent, however, is that the judicial resources of this Court are scarce, particularly in light of the fact that three District Judge seats remain empty in this District, with no meaningful movement by the Senate to confirm the pending nominees. In this Court's estimation, the public expects that judicial resources should be used to decide actual, concrete, disputes between parties with a more significant connection to this District. Hence, this Court has little interest in adjudicating a dispute such as this one that is much more appropriately litigated in a Canadian forum.

### C. Remaining Factors

The remaining factors are of no real import in this Court's analysis as they involve evaluation of the case in relation to parallel litigation in other jurisdictions but there is no case presently pending in Ontario, Canada, or any other forum. *See Reifer*, 751 F.3d at 146 ("(5) a general policy of restraint when the same issues are pending in a state court; (6) avoidance of duplicative litigation; (7) prevention of the use of the declaratory action as a method of

procedural fencing or as a means to provide another forum in a race for res judicata"). Again, the presence of a parallel lawsuit is not a prerequisite to the Court declining to exercise jurisdiction under the Declaratory Judgment Act. *Id.* at 144. In any event, it is fairly obvious that the filing of this lawsuit involved "procedural fencing" of sorts in that FCI's reaction to receiving the letter from 4i dated February 6, 2016 was to file this declaratory judgment claim 5 days later rather than reply to 4i's correspondence. *Id.* at 146. Simply put, FCI filed this lawsuit here first in an apparent effort to win the race to the courthouse and to litigate in its home forum. While the Court has no real problems with the filing as a product of legal strategy, such behavior does not support this Court exercising its power to hear the case – instead, it counsels this Court to dismiss this action. *Id.*

IV. CONCLUSION

Based on the foregoing, the Court will decline to exercise jurisdiction over this declaratory judgment action and 4i's Motion to Dismiss [10] is granted to the extent that the Court will dismiss FCI's Complaint [1], without prejudice. An appropriate Order follows.

*s/Nora Barry Fischer*
Nora Barry Fischer
United States District Judge

Dated: May 18, 2016

cc/ecf: All counsel of record.